**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GARY GOSCIAK, | : | |
| | : | Civil Action No. 10-5822 (SDW) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| JOHN MAIN, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Plaintiff pro se
Gary Gosciak
S.T.U. Annex
8 Production Way
Avenel, NJ 07001

**WIGENTON**, District Judge

Plaintiff Gary Gosciak, a person involuntarily civilly committed pursuant to the Sexually Violent Predator Act, N.J.S.A. 30:4-27.24 et seq., seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence, the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be

granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that for a period of approximately six months prior to submission of the Complaint, the Special Treatment Unit - Annex at Avenel, New Jersey, had been infested with bed bugs, from which he has suffered numerous bites. Plaintiff alleges that exterminators are frequently called in to treat the facility, sometimes as often as three or four times a week.  Plaintiff alleges that he has been treated with cream for his bites, but that the cream is not effective to relieve the itching he has experienced.

Plaintiff alleges that it is a violation of his constitutional rights to keep him confined in a bug-infested facility.  He names as Defendants John Main, the Director of the Department of Human Services, Merril Main, the Clinical Director of the Special Treatment Unit, Shantay Brame Adams, the Assistant Unit Director of the Special Treatment Unit, and Steve Johnson, the Assistant Superintendent of the Special Treatment Unit at Avenel.  Plaintiff seeks compensatory and punitive damages.


## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

3

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual
> allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will
> not do, see Papasan v. Allain, 478 U.S. 265, 286, 106
> S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to
> dismiss, courts "are not bound to accept as true a
> legal conclusion couched as a factual allegation").
> Factual allegations must be enough to raise a right to
> relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

The Supreme Court has demonstrated the application of these general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1
> [conspiracy] claim, we hold that stating such a claim
> requires a complaint with enough factual matter (taken
> as true) to suggest that an agreement was made.  Asking
> for plausible grounds to infer an agreement does not
> impose a probability requirement at the pleading stage;
> it simply calls for enough fact to raise a reasonable
> expectation that discovery will reveal evidence of
> illegal agreement.  And, of course, a well-pleaded
> complaint may proceed even if it strikes a savvy judge
> that actual proof of those facts is improbable, and

4

"that a recovery is very remote and unlikely." ...  It
makes sense to say, therefore, that an allegation of
parallel conduct and a bare assertion of conspiracy
will not suffice.  Without more, parallel conduct does
not suggest conspiracy, and a conclusory allegation of
agreement at some unidentified point does not supply
facts adequate to show illegality.  Hence, when
allegations of parallel conduct are set out in order to
make a § 1 claim, they must be placed in a context that
raises a suggestion of a preceding agreement, not
merely parallel conduct that could just as well be
independent action.

The need at the pleading stage for allegations
plausibly suggesting (not merely consistent with)
agreement reflects the threshold requirement of Rule
8(a)(2) that the "plain statement" possess enough heft
to "sho[w] that the pleader is entitled to relief."  A
statement of parallel conduct, even conduct consciously
undertaken, needs some setting suggesting the agreement
necessary to make out a § 1 claim; without that further
circumstance pointing toward a meeting of the minds, an
account of a defendant's commercial efforts stays in
neutral territory. ...

Twombly, 550 U.S. at 556-57 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the

context of a § 1983 civil rights action, that the Twombly

pleading standard applies outside the § 1 antitrust context in

which it was decided.  See Phillips v. County of Allegheny, 515

F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read

Twombly so narrowly as to limit its holding on plausibility to

the antitrust context").

Context matters in notice pleading.  Fair notice under
Rule 8(a)(2) depends on the type of case -- some
complaints will require at least some factual
allegations to make out a "showing that the pleader is
entitled to relief, in order to give the defendant fair
notice of what the ... claim is and the grounds upon
which it rests."  Indeed, taking Twombly and the

5

> Court's contemporaneous opinion in <u>Erickson v. Pardus</u>,
> 127 S.Ct. 2197 (2007), together, we understand the
> Court to instruct that a situation may arise where, at
> some point, the factual detail in a complaint is so
> undeveloped that it does not provide a defendant the
> type of notice of claim which is contemplated by
> Rule 8.  Put another way, in light of <u>Twombly</u>, Rule
> 8(a)(2) requires a "showing" rather than a blanket
> assertion of an entitlement to relief.  We caution that
> without some factual allegation in the complaint, a
> claimant cannot satisfy the requirement that he or she
> provide not only "fair notice," but also the "grounds"
> on which the claim rests.

<u>Phillips</u>, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of <u>any</u> civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  <u>Id.</u> at 1950.  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  <u>Id.</u>

> Therefore, after <u>Iqbal</u>, when presented with a
> motion to dismiss for failure to state a claim,
> district courts should conduct a two-part analysis.
> First, the factual and legal elements of a claim should
> be separated.  The District Court must accept all of
> the complaint's well-pleaded facts as true, but may

disregard any legal conclusions.  Second, a District
Court must then determine whether the facts alleged in
the complaint are sufficient to show that the plaintiff
has a "plausible claim for relief."  In other words, a
complaint must do more than allege the plaintiff's
entitlement to relief.  A complaint has to "show" such
an entitlement with its facts.  <u>See</u> <u>Phillips</u>, 515 F.3d
at 234-35.  As the Supreme Court instructed in <u>Iqbal</u>,
"[w]here the well-pleaded facts do not permit the court
to infer more than the mere possibility of misconduct,
the complaint has alleged-but it has not
'show[n]'-'that the pleader is entitled to relief.'"
This "plausibility" determination will be "a
context-specific task that requires the reviewing court
to draw on its judicial experience and common sense."

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009)

(citations omitted).

Where a complaint can be remedied by an amendment, a

district court may not dismiss the complaint with prejudice, but

must permit the amendment.  <u>Denton v. Hernandez</u>, 504 U.S. 25, 34

(1992); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d

Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); <u>Shane</u>

<u>v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal

pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v. Harrisburg</u>

<u>County Police Dept.</u>, 91 F.3d 451, 453 (3d Cir. 1996).

### III.   <u>SECTION 1983 ACTIONS</u>

A plaintiff may have a cause of action under 42 U.S.C.

§ 1983 for certain violations of his constitutional rights.

Section 1983 provides in relevant part:

Every person who, under color of any statute,
ordinance, regulation, custom, or usage, of any State
or Territory ... subjects, or causes to be subjected,
any citizen of the United States or other person within

7

the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode v.

8

<u>Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  <u>Accord</u> <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1293-96 (3d Cir. 1997); <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-91 (3d Cir. 1995).[1]

Finally, a § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." <u>Monell</u>, 436 U.S. at 690 n.55.  "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).[2]

---

[1] As it appears that the claim against Defendant John Main is based solely upon an untenable theory of vicarious liability, the claim against him will be dismissed without prejudice.

[2] In addition, here, it is important to note that the claims against the Defendants can be asserted against them only as individuals, as the Eleventh Amendment bars the claims for money damages against them as State officers in their official capacities.  <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 (1985). Section 1983 does not override a state's Eleventh Amendment immunity.  <u>Quern v. Jordan</u>, 440 U.S. 332 (1979).

IV.  <u>ANALYSIS</u>

Plaintiff asserts that his confinement in a facility
infested with bed bugs is a violation of his right under the
Eighth Amendment to be free from cruel and unusual punishment.
However, pretrial and civil detainees such as Plaintiff are
protected by the Due Process Clause of the Fourteenth Amendment;
only convicted and sentenced prisoners are protected by the
Eighth Amendment.  <u>See</u>, <u>e.g.</u>, <u>Whitley v. Albers</u>, 475 U.S. 312
(1986); <u>City of Revere v. Massachusetts General Hospital</u>, 463
U.S. 239, 244 (1983); <u>Youngberg v. Romeo</u>, 457 U.S. 307 (1982)
(involuntarily-committed mental patients); <u>Bell v. Wolfish</u>, 441
U.S. 520, 535, n.16, 545 (1979) (adult pre-trial detainees);
<u>Ingraham v. Wright</u>, 430 U.S. 651, 664 (1977) (students
disciplined at school).  <u>See also</u> <u>In re Commitments of M.G. and
D.C.</u>, 751 A.2d 1101, 1105 (N.J.Super. App. Div. 2000) (persons
committed under the Sexually Violent Predator Act are "patients
at a secure treatment facility, not inmates").  As Plaintiff is
not detained as a convicted and sentenced prisoner, the Eighth
Amendment does not apply to him.  This Court will liberally
construe the Complaint as attempting to assert a claim for
deprivation of liberty without due process.

The Due Process Clause of the Fourteenth Amendment
"generally confer[s] no affirmative right to governmental aid."
<u>DeShaney v. Winnebago Cty. Dep't of Soc. Servs.</u>, 489 U.S. 189,

196 (1989).  However, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."  DeShaney, 489 U.S. at 199-200.  See also Youngberg v. Romeo, 457 U.S. 307, 324 (1982) (when the state deprives an individual of liberty through involuntary commitment proceedings, it undertakes an affirmative obligation to confine the individual under "conditions of reasonable care and safety" that are "reasonably nonrestrictive" and to provide the individual with "such training as may be required by these interests"); Collins v. City of Harker Heights, 503 U.S. 115, 127 (1992) ("the Due Process Clause of its own force requires that conditions of confinement satisfy certain minimal standards for pretrial detainees, for persons in mental institutions, for convicted felons, and for persons under arrest") (citations omitted).

The Supreme Court explained the rationale for this exception in DeShaney:

> [W]hen the State by the affirmative exercise of its
> power so restrains an individual's liberty that it
> renders him unable to care for himself, and at the same
> time fails to provide for his basic human needs- e.g.,
> food, clothing, shelter, medical care, and reasonable
> safety-it transgresses the substantive limits on state
> action set by the Eighth Amendment and the Due Process
> Clause.  The affirmative duty to protect arises not
> from the State's knowledge of the individual's
> predicament or from its expressions of intent to help
> him, but from the limitation which it has imposed on
> his freedom to act on his own behalf.

11

Id. at 200 (citations omitted).  In other words, "[t]he 'process'
that the Constitution guarantees in connection with any
deprivation of liberty ... includes a continuing obligation to
satisfy certain minimal custodial standards." Collins, 503 U.S.
at 127-28.  The Supreme Court has stressed that "it is the
State's affirmative act of restraining the individual's freedom
to act on his own behalf-through incarceration,
institutionalization, or other similar restraint of personal
liberty-which is the 'deprivation of liberty' triggering the
protections of the Due Process Clause." DeShaney, 489 U.S. at
200.

    These liberty interests, however, are not absolute.
Youngberg, 457 U.S. at 319-20.  "In determining whether a
substantive right protected by the Due Process Clause has been
violated, it is necessary to balance "the liberty of the
individual" and "the demands of an organized society." Id. at
320 (quoting Poe v. Ullman, 367 U.S. 497, 542 (1961)(Harlan, J.,
dissenting)).  In seeking this balance, a court must weigh "the
individual's interest in liberty against the State's asserted
reasons for restraining individual liberty." Id.  In Youngberg,
balancing the interests of the State against the rights of
involuntarily committed mentally retarded persons to reasonable
conditions of safety and freedom from unreasonable restraints,
the Court adopted the standard advocated by a concurring judge,

below, that "the Constitution only requires that the courts make certain that professional judgment in fact was exercised.  It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made."  487 U.S. at 321 (quoting 644 F.2d 147, 178 (3d Cir. 1980) (Seitz, C.J., concurring)).  Thus, even when treatment decisions violate a protected liberty interest, such decisions made by a qualified professional are presumptively valid;

> liability may be imposed only when the decision by the
> professional is such a substantial departure from
> accepted professional judgment, practice, or standards
> as to demonstrate that the person responsible actually
> did not base the decision on such a judgment.  In an
> action for damages against a professional in his
> individual capacity, however, the professional will not
> be liable if he was unable to satisfy his normal
> professional standards because of budgetary
> constraints; in such a situation, good-faith immunity
> would bar liability.

457 U.S. at 323 (footnote omitted).

Here, Plaintiff has alleged that institutional officials have, in fact, exercised professional judgment; they have employed a comprehensive extermination program to combat the bed bug infestation, including treatments as often as four times per week.  In an unpublished decision, the U.S. Court of Appeals for the Seventh Circuit commented, "Courts have routinely recognized that "[k]eeping vermin under control in jails, prisons and other large institutions is a monumental task, and that failure to do so, without any suggestion that it reflects deliberate and

13

reckless conduct in the criminal law sense, is not a constitutional violation." <u>Chavis v. Fairman</u>, 1995 WL 156599, *4 (7th Cir. Apr. 6, 1995) (internal punctuation and string citations omitted).  Specifically with respect to vermin- and insect-infestation due process claims by civilly-committed sex offenders, the Court of Appeals for the Seventh Circuit has held that a policy of frequent exterminations cannot support a claim of unconstitutional conditions of confinement. <u>See</u> <u>Sain v. Wood</u>, 512 F.3d 886 (7th Cir. 2008). <u>Cf.</u> <u>Antonelli v. Sheahan</u>, 81 F.3d 1442 (7th Cir. 1995) (under the Eighth Amendment, an only occasional extermination, twice in sixteen months, does not, by itself, necessarily negate a showing of deliberate indifference, especially in the fact of significant physical harm).

As the allegations of the Complaint indicate that professional judgment has been exercised in continuing efforts to combat the bed bug infestation, Plaintiff has failed to state a claim for deprivation of liberty without due process.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Complaint will be dismissed without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim.[3]  However,

---

[3] The Court notes that "'[g]enerally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action.' ...  The dispositive inquiry is whether the district court's order finally

14

because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies noted herein, the Court will grant Plaintiff leave to move to re-open and file an amended complaint.[4]  An appropriate order follows.

s/Susan D. Wigenton
Susan D. Wigenton
United States District Judge

Dated: June 21, 2011

---

resolved the case." Martin v. Brown, 63 F.3d 1252, 1257-58 (3d Cir. 1995) (quoting Borelli v. City of Reading, 532 F.2d 950, 951 (3d Cir. 1976)) (other citations omitted).  In this case, if Plaintiff can correct the deficiencies of his Complaint, he may file a motion to re-open these claims in accordance with the court rules.

    [4] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.